**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
David J. McGlothlin, Esq. (SBN: 253265)
david@kazlg.com
Mona Amini, Esq. (SBN: 296829)
mona@kazlg.com
Gustavo Ponce, Esq. (SBN: 343430)
gustavo@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Susan Ayers

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN AYERS. on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> NATIONAL SENIOR BENEFIT ADVISORS, INC. d/b/a NSBA INSURANCE AGENCY, <br><br> Defendant. | Case No.: **'25CV1219 CAB VET** <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT (TCPA) 47 U.S.C §§ 227, ET SEQ.** <br><br> **DEMAND FOR JURY TRIAL** |

1
CLASS ACTION COMPLAINT

# INTRODUCTION

1. Plaintiff SUSAN AYERS ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against NATIONAL SENIOR BENEFIT ADVISORS, INC. d/b/a NSBA INSURANCE AGENCY ("Defendant") for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendant negligently and/or willfully contacting Plaintiff on Plaintiff's telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq., ("TCPA") and related regulations, thereby invading Plaintiff's privacy, specifically for claims under the National Do Not Call provision of 47 C.F.R. § 64.1200(c).

2. Plaintiff alleges as follows upon personal knowledge as to himself and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

3. This case is brought to enforce the consumer privacy provisions afforded by the TCPA, a federal law that was designed to curtail abusive telemarketing practices precisely like those described herein.

4. In 1991, Congress passed the TCPA in response to complaints about certain telemarketing practices. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11.

5. The United States Court of Appeals for the Ninth Circuit has held that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540,

2
CLASS ACTION COMPLAINT

1549 (2016) (emphasis original)).

6. Although a caller may obtain prior express consent from a consumer, prior express consent may nevertheless be revoked.

7. The right to revocation is consistent with the common law principle that consent is revocable and honors the purpose of the TPCA.

8. This case is brought to enforce the consumer privacy provisions afforded by the TCPA, a federal law that was designed to curtail abusive telemarketing practices precisely like those described herein.

9. Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by bombarding Plaintiff and other similarly situated consumers' cellular telephones with non-emergency communications and telemarketing phone calls without prior express written consent.

10. The TCPA was enacted to protect consumers from unsolicited and unwanted telephone calls exactly like those alleged in this case.

11. In response to Defendant's unlawful conduct, Plaintiff seeks an injunction requiring Defendant to cease all unsolicited pre-recorded voice messages to non-consenting consumers, as well as an award of statutory damages and treble damages (for knowing and/or willful violations) for Plaintiff and each of the Class Members, per violation, together with court costs, and reasonable attorneys' fees.

12. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

13. Unless otherwise stated, Plaintiff alleges that any violations by Defendant were knowing and intentional, and that Defendant did not maintain procedures reasonably adapted to avoid any such violation.

14. Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, vendors, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

**JURISDICTION AND VENUE**

15. This Court has federal question subject matter jurisdiction over this class action lawsuit pursuant to 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA.

16. The Court has personal jurisdiction over Defendant because Defendant conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

17. Personal jurisdiction and venue are proper in the Southern District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (1) the conduct complained of herein arose within this District; and (2) Defendant has resided or maintained a principal place of business within this District at all times relevant.

18. Venue is proper in the United States District Court for the Southern District of California pursuant to 18 U.S.C. § 1391 because the conduct complained of herein occurred within this judicial district and many of the acts and transactions giving rise to this action occurred in this district because:

   a. Defendant is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this District;
   b. Defendant does substantial business within this District;
   c. Defendant is subject to personal jurisdiction in this judicial district because Defendant has availed itself of the laws and markets within this District; and,
   d. the harm to Plaintiff occurred within this District.

**PARTIES**

19. Plaintiff is, and at all times mentioned herein was, a resident of the State of Mississippi, in County of Yalobusha. Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

20. Defendant is a limited liability formed under the laws of the State of

4
CLASS ACTION COMPLAINT

California, with a principal place of business located in San Diego, California. Defendant is, and at all times mentioned herein was, a company and a "person," as defined by 47 U.S.C. § 153(39).

21. At all times relevant, Defendant conducted business in the State of California and within this judicial district.

## TCPA BACKGROUND

22. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy.…" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

23. The TCPA was designed to prevent calls and messages like the one described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

24. Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment, as well as violations of the TCPA's National Do-Not-Call provision of 47 C.F.R. § 64.1200(c).[1] The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines.

25. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate

---

[1] According to the Federal Communications Commission's website, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list, accessed on June 3, 2021: Placing telemarketing calls to wireless phones is - and always has been - illegal in most cases.

5
CLASS ACTION COMPLAINT

burden on the consumer." TCPA, Pub.L. No. 102-243, § 11. Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

26. Text messages are calls and are subject to the TCPA. *See, e.g., Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

27. 47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendant's texts to Plaintiff are—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party …"

28. 47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

29.  As of October 16, 2013, unless the recipient has given *prior express written consent*,[2] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.
- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.
- Prohibit solicitations to residences that use an artificial voice or a recording.
- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.
- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.
- Prohibit autodialed calls that engage two or more lines of a multi-line business.
- Prohibit unsolicited advertising faxes.
- Prohibit certain calls to members of the National Do-Not Call Registry.

---

[2] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

7
CLASS ACTION COMPLAINT

30. Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).

31. Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

32. With respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.* Thus, any second call placed to a wrong number violates the TCPA.

33. The TCPA provides for damages in the amount of $500 for each negligent violation and $1,500 for each knowing violation. *See* 47 U.S.C. § 227(c)(5).

## FACTUAL ALLEGATIONS

34. Defendant markets itself as a national insurance agency that specializes in helping individuals enroll in Medicare and other senior-related products.

35. In Defendant's overzealous attempt to market its services, Defendant knowingly and willfully made (and continues to make) unsolicited telemarketing phone calls without the prior written express consent of the call recipients.

36. Through this conduct, Defendant has violated the TCPA and invaded the privacy of Plaintiff and the members of the Class.

37. Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

38. Defendant is, and at all times mentioned herein was, a company and a "person," as defined by 47 U.S.C. § 153(39). Upon information and belief, Defendant made numerous unsolicited telephone calls to Plaintiff and the Class members.

39. At all relevant times, Plaintiff was assigned, and was the owner of, a cellular telephone number of ending in 8032 ("Cell Phone"). Plaintiff is the sole user and/or subscriber of the Cell Phone.

40. Plaintiff registered the Cell Phone with the National Do Not Call Registry on or about March 10, 2023.

41. Plaintiff did not provide Defendant with the Cell Phone number at any point in time, nor did Plaintiff give permission for Defendant to call the Cell Phone.

42. Plaintiff did not have an established business relationship with Defendant prior to or during the time of the telephone solicitations from Defendant.

43. Plaintiff did not have a personal relationship with Defendant at any point in time.

44. Plaintiff did not give Defendant prior express invitation or consent in writing for Defendant to call Plaintiff's Cell Phone for marketing or solicitation purposes.

45. Despite Plaintiff's Cell Phone number being registered on the National Do Not Call Registry for over 31 days, Defendant made several unsolicited telemarketing calls to Plaintiff's Cell Phone.

46. Specifically, on or around July 19, 2024, Defendant caused a telemarketing call to be made to Plaintiff's Cell Phone from the telephone number 662-208-7992.

47. Subsequently, on or around July 23, 2024, Defendant caused a

telemarketing call to be made to Plaintiff's Cell Phone from the telephone number 662-208-8081.

48. Also, on or around July 23, 2024, Defendant caused another telemarketing call to be made to Plaintiff's Cell Phone from the telephone number 662-208-7913.

49. On or around July 24, 2024, Defendant caused another telemarketing call to be made to Plaintiff's Cell Phone from the telephone number 662-208-7997.

50. On or around July 25, 2024, Defendant caused another telemarketing call to be made to Plaintiff's Cell Phone from the telephone number 662-208-7966.

51. On or around July 31, 2024, Defendant caused another telemarketing call to be made to Plaintiff's Cell Phone from the telephone number 662-208-7950.

52. On or around August 2, 2024, Defendant caused another telemarketing call to be made to Plaintiff's Cell Phone from the telephone number 662-208-8004.

53. On or around August 2, 2024, Defendant caused another telemarketing call to be made to Plaintiff's Cell Phone from the telephone number 662-208-8020.

54. On or around August 2, 2024, Defendant caused another telemarketing call to be made to Plaintiff's Cell Phone from the telephone number 662-208-8023.

55. On or around August 13, 2024, Defendant caused another telemarketing call to be made to Plaintiff's Cell Phone from the telephone number 662-208-8022.

56. On or around August 16, 2024, Defendant caused another telemarketing call to be made to Plaintiff's Cell Phone from the telephone number 662-208-7996.

57. On or around August 16, 2024, Defendant caused another telemarketing call to be made to Plaintiff's Cell Phone from the telephone number 662-208-7865.

58. Such calls from on behalf of Defendant constitute telephone solicitations pursuant to 47 C.F.R. § 64.1200(c), as they were an attempt to promote or sell Defendant's services.

59. Plaintiff received more than two telephone solicitations from Defendant within a 12-month period after her Cell Phone number was registered on the National Do Not Call Registry for at least 31 days.

60. Defendant's unsolicited telephone calls constituted telemarketing and had a commercial purpose.

61. Upon information and belief, Defendant did not make the telephone solicitations in error.

62. At all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including the Do-Not Call provision in 47 C.F.R. § 64.1200(c).

63. Defendant did not place the calls to Plaintiff for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

64. Each of the above unsolicited telephonic communications by Defendant and/or its agents violated 47 U.S.C. § 227(b)(1).

65. Defendant's telephonic communications forced Plaintiff to be deprived of the privacy and utility of Plaintiff's Cell Phone by forcing Plaintiff to ignore or reject Defendant's disruptive calls, voice messages, dismiss alerts, and/or silence Plaintiff's Cell Phone as a result of Defendant's incessant unsolicited telephone calls.

66. The TCPA was intended to give individuals control over how and where they receive telephonic communications.  When Defendant placed the calls to Plaintiff without Plaintiff's consent, Defendant failed to address or respect the limitations imposed by the TCPA. In doing so, Defendant invaded Plaintiff's privacy and violated the spirit and intent behind the TCPA.

67. Receiving Defendant's repeated unsolicited telemarketing drained Plaintiff's phone battery, consumed space on Plaintiff's Cell Phone, and caused Plaintiff additional electric expenses and wear and tear on Plaintiff's phone and battery.

68. The cumulative effect of unsolicited phone calls like Defendant's poses a real risk of ultimately rendering the Cell Phone unusable for other purposes as a result of the Cell Phone's memory being taken up.

69. Plaintiff was personally affected because Plaintiff was frustrated,

CLASS ACTION COMPLAINT

distressed, disturbed, and felt harassed that Defendant and/or its agents continued to direct unsolicited and unauthorized phone calls to Plaintiff's Cell Phone.

70. Defendant's violations caused Plaintiff to suffer real and concrete harm in the form of intrusion and distraction, wasted time, wasted cellular phone battery, loss of cellular phone use, and natural and foreseeable stress and frustration in connection with the foregoing, all of which the TCPA was designed to prevent. *See, e.g., Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 U.S. Dist. LEXIS 84972, at *8 (N.D.W. Va. June 30, 2016) ("[S]uch calls also cause intangible injuries, regardless of whether the consumer has a prepaid cell phone or a plan with a limited number of minutes. The main types of intangible harm that unlawful calls cause are (1) invasion of privacy, (2) intrusion upon and occupation of the capacity of the consumer's cell phone, and (3) wasting the consumer's time or causing the risk of personal injury due to interruption and distraction.").

71. Because Plaintiff is alerted when a call is made to Plaintiff's Cell Phone, the unsolicited telephone solicitation that Defendant transmitted to Plaintiff's Cell Phone invaded Plaintiff's privacy, was a nuisance, and distracted and aggravated Plaintiff upon receipt.

72. Plaintiff was personally affected and damaged by Defendant's aforementioned conduct because Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically protected by the TCPA. Plaintiff was frustrated and distressed that Defendant annoyed Plaintiff with unwanted telephonic solicitations, without Plaintiff's prior express written consent, and while Plaintiff's Cell Phone was registered on the National Do Not Call Registry.

73. Defendant's telephonic communications forced Plaintiff and Class members to live without the utility of their cellular telephones by forcing Plaintiff and Class members to silence their cellular telephones and/or block incoming numbers and/or interrupted their desired use of their cellular telephones.

74. The TCPA was intended to give individuals control over how and where they receive telephonic communications. When Defendant made such solicitation calls to consumers without their consent, Defendant fails to respect the limitations imposed by the TCPA. In doing so, Defendant invade Plaintiff and similarly situated persons' privacy and violates the spirit and intent behind the TCPA.

75. Through the above conduct, Defendant violated 47 U.S.C. §§ 227, *et seq*. and the National Do Not Call provision of 47 C.F.R. § 64.1200(c).

## STANDING

76. Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state: (a) a valid injury in fact; (b) which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision. *See*, *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016)*; Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### *The "Injury in Fact"*

77. Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as articulated in *Spokeo*. *Spokeo*, 136 S.Ct. at 1547.

78. For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). In this case, Defendant made numerous unsolicited telephone calls to Plaintiff's cellular telephone. Such phone calls are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and *de facto*.

79. For an injury to be "particularized" means that the injury must "affect the Plaintiff in a personal and individual way." *Spokeo, Inc.*, 136 S.Ct. at 1543. In this case, Defendant invaded Plaintiff's privacy and peace by directing unsolicited telephone calls, to Plaintiff's cellular telephone. Furthermore, Plaintiff was distracted, inconvenienced, and annoyed by having to take time to see who was calling and silencing or ignoring Defendant's calls. All of these injuries are particularized and

specific to Plaintiff and will be the same injuries suffered by each member of the putative class.

### The "Traceable to the Conduct of Defendant"

80. The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that its injuries are traceable to the conduct of Defendant.

81. The above-mentioned unsolicited phone calls were linked to Defendant. These unsolicited telephone calls are the source of Plaintiff's and the Class Members' injuries and traceable to Defendant. Thus, Plaintiff has illustrated facts that show that Plaintiff's injuries are traceable to the conduct of Defendant.

### The "Injury is Likely to be Redressed by a Favorable Judicial Opinion"

82. The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

83. In the present case, Plaintiff's Request for Relief includes a request for injunctive relief and statutory damages for each phone call made by Defendant to cellular numbers who did not previously consent to receive telephone solicitation communications to their cellular phones from Defendant, as authorized by statute in 47 U.S.C. § 227. The injunctive relief and statutory damages were created by Congress and specifically redress the damages suffered by Plaintiff and the putative Class Members.

84. Because all standing requirements of Article III of the U.S. Constitution have been met, Plaintiff has standing to sue Defendant on the stated claims.

//
//
//
//
//

## CLASS ACTION ALLEGATIONS

85. Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated (the "Class").

86. Plaintiff seeks to represent, and is a member of, the Class, consisting of:

> All persons within the United States, with telephone numbers registered on the National Do Not Call Registry for at least 31 days, to whom Defendant and/or a third party acting on Defendant's behalf, made two more telephone calls promoting Defendant's products or services, to a cellular telephone number within any twelve-month period, within the four (4) years prior to the filing of the Complaint.

87. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

88. Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class members via their telephones, whether cellular telephones or otherwise, for solicitation purposes, thereby invading the privacy of said Plaintiff and the Class members whose cellular telephone numbers were on the National Do Not Call Registry. Plaintiff and the Class members were damaged thereby.

89. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

90. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court. The Class can be identified through Defendant's records or Defendant's agents' records and the National Do Not Call Registry.

91. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual Class members, including the following:

    a. Whether, within the four years prior to the filing of this Complaint, Defendant or its agents placed more than one telephone solicitation to the members of the Class whose telephone numbers were on the National Do Not Call Registry and who had neither an established business relationship nor personal relationship with Defendant;

    b. Whether Defendant obtained prior express written consent to place telephone solicitations to Plaintiff or the Class members' telephones;

    c. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

    d. Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

92. As a person who received numerous telephone solicitations from Defendant within a 12-month period, who did not have an established business relationship or personal relationship with Defendant, and who did not provide Defendant prior express invitation or permission to receive telephone solicitations, Plaintiff is asserting claims that are typical of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

93. Plaintiff and the members of the Class have all suffered irreparable harm and invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA, as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to be damaged and face irreparable harm. In addition, these violations of law will be allowed to proceed

without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

94. Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

95. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal and California law. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

96. Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### NEGLIGENT VIOLATIONS OF THE TCPA
### 47 U.S.C. §§ 227, *ET SEQ.*

97. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

98. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, *et seq.*, including implementing regulation 47 C.F.R. § 64.1200(c).

99. As a result of Defendant's negligent violations of 47 U.S.C. §§ 227, *et seq.*, Plaintiff and each member of the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

100. Plaintiff and the Class are also entitled to and seek injunctive relief

prohibiting such conduct in the future.

**SECOND CAUSE OF ACTION**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA**
**47 U.S.C. §§ 227, *ET SEQ.***

101. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

102. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, *et seq.*, including implementing regulation 47 C.F.R. § 65.1200(c).

103. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and each member of the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

104. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members the following relief against Defendant:

- An Order certifying this action to be as a Class Action pursuant to Federal Rule of Civil Procedure 23, establishing the defined Class and any subclasses the Court deems appropriate, appointing Plaintiff is a proper representative of the Class, and appointing Plaintiff's Counsel as Class Counsel;
- An Order declaring Defendant's conduct, as alleged above, was in violation of the TCPA and the National Do Not Call provision of 47 C.F.R. § 64.1200(c);
- As a result of Defendant's negligent violations of 47 U.S.C. § 227(c), Plaintiff seeks for himself and each Class member: (i) $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5); (ii) injunctive

18
CLASS ACTION COMPLAINT

relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(c)(5)(A); (iii) costs of suit; (iv) pre and post-judgment interest; (v) reasonable attorneys' fees pursuant to, *inter alia*, the common fund doctrine; (vi) any other relief the Court may deem just and proper; and

- As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(c), Plaintiff seeks for himself and each Class member: (i) $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5); (ii) injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(c)(5)(A); (iii) costs of suit; (iv) pre and post-judgment interest; (v) reasonable attorneys' fees pursuant to, *inter alia*, the common fund doctrine; and (vi) any other relief the Court may deem just and proper.
- Costs of suit.
- Pre and post-judgment interest, to the extent permitted by applicable law.
- Reasonable attorneys' fees to Plaintiff's counsel pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5 and the common fund doctrine.
- Any other relief the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

105. Plaintiff is entitled to, and demands, a trial by jury on all issues so triable.

Dated: May 12, 2025                         Respectfully submitted,

                                        **KAZEROUNI LAW GROUP, APC**

By:    */s/ Mona Amini*
        Abbas Kazerounian, Esq.
        David J. McGlothlin, Esq.
        Mona Amini, Esq.
        Gustavo Ponce, Esq.
        *Attorneys for Plaintiff*