UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN AYERS, on behalf of herself, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL SENIOR BENEFIT ADVISORS, INC. d/b/a NSBA INSURANCE AGENCY,<br><br>Defendant. | Case No.: 3:25-cv-01219-CAB-VET<br><br>**ORDER:**<br>**(1) HOLDING MOTION TO COMPEL ARBITRATION IN ABEYANCE [Doc. No. 8]**<br><br>**(2) REQUIRING LIMITED DISCOVERY AND TRIAL ON ARBITRABILITY** |

Susan Ayers ("Plaintiff") filed a putative class action against National Senior Benefit Advisors, Inc. d/b/a NSBA Insurance Agency ("NSBA" or "Defendant") alleging that Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, et seq., and related regulations, by making unsolicited and unwanted telephone calls to her and the members of the putative class. [*See* Doc. No. 1 at 2–3.] Now before the Court is Defendant's motion to compel arbitration. [Doc. No. 8.] For the reasons set forth below, the Court will hold Defendant's motion to compel arbitration in abeyance to allow for limited discovery and a trial on whether Plaintiff visited the website in question and assented to the contract containing the alleged arbitration agreement.

## I. BACKGROUND

"Voluminous consumer complaints about abuses of telephone technology . . . prompted Congress to pass the TCPA" in 1991. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370–71 (2012). The TCPA restricts a number of telemarketing practices deemed invasive of privacy without a consumer's prior express and written consent to be contacted. *Id.* The restricted telemarketing practices include calling homes before 8 a.m. or after 9 p.m., using artificial or prerecorded voices in messages to wireless devices or cellular telephones, and calling members of the National Do-Not Call Registry. [Doc. No. 1 ¶ 29.]

Plaintiff alleges that she and others like her received "unsolicited telemarketing phone calls [from Defendant] without the prior written express consent of the call recipients." [*Id.* at ¶ 35.] Though Defendant never directly called Plaintiff, Defendant says that Plaintiff was transferred to a representative of Defendant after being called by a third party and expressing interest in speaking with Defendant. [Doc. No. 8-1 at 7.]

Defendant also contends that Plaintiff *did* provide prior express written consent to be contacted by visiting a website owned and operated by a marketing partner of Defendant —the American Survey —and submitting her information. [*Id.*] The following are the steps Defendant alleges that a user like the Plaintiff would take when visiting the American Survey website ("the Site"). First, a user must enter or confirm her email and then click "Continue" to enter the Site. [*Id.* at 8.] Above the "Continue" button, the following language is displayed:

> No purchase necessary to play or win. By clicking the button below, I confirm I am over 18 and I agree to: (i) the Privacy Policy and Terms and Conditions; (ii) receive daily email from us, our affiliated companies, and unaffiliated third parties, which can unsubscribe from at any time; and (iii) How It Works. I confirm I am entering the The American Survey sweepstakes and agree to the Official Contest Rules.

[*Id.*] The screenshot below shows how this would have been displayed:



After clicking "Continue," a user inputs additional information, including first name, last name, street address, zip code, date of birth, telephone number. [*Id.* at 9.] Then the user is presented with a series of questions, including a question about the user's health insurance coverage. At the bottom of the screen the user is informed that:

> By clicking an option above except for 'No Call / Skip This Offer', I provide my consent directly to Health Advisors . . . and up to 8 marketing partners to call and text me about health insurance . . . via autodialer and/or artificial/prerecorded voice at [phone number] until such time that I revoke my consent. Consent isn't required – I can proceed without consenting by clicking "No Call/Skip This Offer". **I also have read and agree to the Terms of Use (which requires arbitration)** linked near the bottom of this page[.]

[*Id.* at 10 (emphasis added).]

///
///
///
///
///
///
///
///

This step is shown in the screenshot below:

[Screenshot of Surveys 4 Members webpage with header "Answer our survey and you could win $500!" and question "susan, Which best describes your Health Insurance coverage?" with buttons for No Insurance, Private Insurance, Medicare & Medicaid, Medicare, Medicaid, Insured through work, and a "No Call / Skip This Offer" link, followed by consent disclosure text. MULTI-PLAN_kcv5jDf2024_C]

Defendant's records show that Plaintiff's information was submitted on July 16, 2024 at 12:40 p.m. and that she selected the "private insurance" button. [*Id.* at 10.] Plaintiff denies ever visiting this site or providing her consent. [Doc. No. 10 at 18–20.]

## II.   LEGAL STANDARDS

Section 4 of the Federal Arbitration Act ("FAA") permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement."  9 U.S.C. § 4.  On a motion to compel arbitration, the court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

"[A] party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate.  Only a court can make that decision."  *Three Valleys Mun. Water Dist. v. E.F.*

*Hutton & Co.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991). For this inquiry, "the court applies a standard similar to the summary judgment standard of Fed. R. Civ. Proc. 56." *McCarthy v. Providential Corp.*, No. 94-CV-0627, 1994 WL 387852, at *2 (N.D. Cal. July 19, 1994). Thus, "[o]nly when there is no genuine issue of fact concerning the formation of an [arbitration] agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Three Valleys*, 925 F.2d at 1141 (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51 (3d Cir.1980)). Otherwise, the issue should be submitted to a jury. *Id.*

## III. ANALYSIS

The threshold issue here is whether a valid agreement to arbitrate exists, given that— despite Defendant's evidence to the contrary—Plaintiff claims she never visited the website(s) in question, never submitted her contact information, and never agreed to be contacted. [*See* Doc. No. 10 at 18–21.]

Defendant submitted extensive evidence that the websites in question have records of over sixty submissions containing Plaintiff's contact and other identifying information. [*See* Doc. No. 8-2 ¶¶ 29–32; Doc. No. 8-3.] Plaintiff counters that she never visited those websites, nor did she "enter [her] information, or authorize[] anyone else to enter [her] information, into [the websites in question]." [Doc. No. 10-1 ¶¶ 7–8.] Plaintiff also attests that she was not in the location of the identified IP address on the relevant date and time; instead, she was "at work where [she] do[es] not use [her] cellular phone until the end of the workday." [*Id.* at ¶¶ 4–6.] Defendant argues that such conclusory statements are not only insufficient to contest the detailed evidence provided, but also contradicted by the fact that the identified IP addresses correspond to Plaintiff's employer. [*See* Doc. No. 12 at 3.]

The Court agrees that Plaintiff's conclusory declaration is extremely thin. However, the Court must give Plaintiff the benefit of all reasonable doubts and inferences at this stage. In light of Plaintiff's statements that she was at work in a different location and without her cell phone when the alleged submission occurred, a material fact remains in dispute. Moreover, though the Court finds Plaintiff's statements questionable in light of

Defendant's detailed evidence, credibility determinations are "exclusively within the province of the factfinder at trial, not the district court on summary judgment." *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1036 (9th Cir. 2005).

In such a circumstance, 9 U.S.C. § 4 provides that "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." *See also Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 672 (9th Cir. 2021) ("[O]nce a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved.").

To prepare for trial, if necessary, and given that the only evidence presented to date on the disputed contract-formation question is in the form of the parties' affidavits on the motion to compel arbitration, the Court **ORDERS** the parties to engage in targeted discovery on the disputed contract-formation question. *Knapke v. PeopleConnect, Inc*, 38 F.4th 824, 833 (9th Cir. 2022) ("[W]e have confirmed that the FAA's procedure mirrors the three phases of federal civil lawsuits: a motion to compel arbitration akin to a motion to dismiss; followed by optional discovery before summary judgment, if the motion is denied; followed by a mini-trial, if necessary."); *accord Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 844 (6th Cir. 2021).

///
///
///
///
///
///
///
///
///

## IV. CONCLUSION

Based on the foregoing, the Court holds Defendant's motion to compel arbitration, [Doc. No. 8], in abeyance pending targeted discovery on the disputed contract-formation question. Following the completion of discovery, the Court may proceed to a trial limited to this issue in accordance with 9 U.S.C. § 4, if necessary.

The parties are directed to contact the chambers of Magistrate Judge Torres forthwith to enter a discovery and scheduling order in accordance with this Order.

It is **SO ORDERED.**

Dated: December 12, 2025

Hon. Cathy Ann Bencivengo
United States District Judge